# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-CT-00280-SCT

*JULIANNA LAMAR*

*v.*

*THOMAS FOWLER TRUCKING, INC.*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 12/19/2003 |
| TRIAL JUDGE: | HON. ANDREW C. BAKER |
| COURT FROM WHICH APPEALED: | PANOLA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JOHN GRIFFIN JONES |
| | GILSON DAVIS PETERSON |
| | T. STEWART LEE, JR. |
| | CRAIG ROBERT SESSUMS |
| ATTORNEYS FOR APPELLEE: | MATTHEW ANDERSON TAYLOR |
| | PAUL T. LEE, JR. |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED - 05/24/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     A subcontractor's employee was killed while hauling logs. The subcontractor claims it is entitled to the "exclusive remedy" immunity provided by Mississippi's workers' compensation statutes, Miss. Code Ann. § 71-3-1 et seq. (Rev. 2000) (the "Act"), because the general contractor deducted workers' compensation premiums from payments due the subcontractor and because one of the deceased employee's daughters elected to accept workers' compensation benefits from the Mississippi Loggers Self-Insured Fund. The

deceased employee's other daughter, the Appellant, received no workers compensation benefits, and filed a wrongful death suit. The question presented is whether the workers' compensation statutes provide the subcontractor immunity from the wrongful death suit.

## BACKGROUND FACTS AND PROCEEDINGS

¶2.    The opinion rendered in this case by the Court of Appeals includes an excellent recitation of the facts. ***Lamar v. Fowler Trucking***, 2006 Miss. App. LEXIS 249, 2004-CA-00280-COA (Miss. Ct. App. 2006). We provide the following abbreviated version.

¶3.    Ira Bobo ("Bobo") was killed while working for Fowler Trucking, which was transporting logs for Golden Timber, Inc.[1] Bobo's youngest daughter, Tracie, was considered a dependent as defined by section 71-3-25 of the Act, and was voluntarily paid death benefits by Golden Timber's workers' compensation carrier.[2] Bobo's oldest daughter, Julianna Lamar ("Lamar") however, was not a dependent as defined by the Act, and was paid nothing. Lamar filed a wrongful death suit against Fowler Trucking, Golden Timber and two of Golden Timber's employees. Golden Timber and its employees were dismissed by agreed order, because Golden Timber was Bobo's statutory employer and, therefore, was afforded immunity under the Act. Fowler Trucking moved for summary judgment, arguing that it also was protected by the exclusivity provision of the Act because it procured workers' compensation insurance through Golden Timber.

### A.    Trial Court Proceeding

---

[1] Fowler Trucking was a subcontractor of Golden Timber.

[2] Mississippi Loggers Self-Insured Fund.

2

¶4.     At the hearing on the motions for summary judgment, Fowler Trucking asserted that it paid premiums to Golden Timber in order to be included under Golden Timber's workers' compensation policy.  Golden Timber's bookkeeper testified in her deposition that money was withheld from payments due to Fowler Trucking to cover the cost of the workers' compensation policy.

¶5.     Relying on ***Bevis v. Linkous Constr. Co.***, 856 So. 2d 535 (Miss. Ct. App. 2003), the trial court held the Fowler Trucking was not obligated to secure workers' compensation coverage for Bobo because Golden Timber paid compensation to Bobo's heirs.[3]  In ***Bevis***, the Court of Appeals stated that "so long as coverage is provided *by either the subcontractor or the contractor*, recovery under workers' compensation is the injured worker's sole remedy."  856 So. 2d at 541  (emphasis added).  The trial court, finding that the statutes provided for an election of remedies in this case, granted summary judgment in favor of Fowler Trucking, because Bobo's "beneficiaries" received death benefits.  The trial court held that this precluded Lamar from asserting an independent tort action against Fowler Trucking.

### B.     Court of Appeals Proceeding

¶6.     The Court of Appeals affirmed the trial court's grant of summary judgment in favor of Fowler Trucking.  The Court of Appeals, however, found that the trial court should not have relied on ***Bevis*** "to find that the 'up-the-line' immunity in that case applied equally to a subcontractor in a 'down-the-line' situation."  ***Lamar***, 2006 Miss. App. LEXIS 249 at *24

---

[3]While both the trial court and Court of Appeals found that Bobo's "beneficiaries" or "heirs" recovered death benefits, we hasten to point out that only one beneficiary, Lamar's younger sister Tracie, was paid dependant benefits as a result of Bobo's death.

(Miss. Ct. App. 2006). The Court of Appeals stated, "[w]e do not find that **Bevis** can automatically be applied to the 'down-the-line' situation." **Id**.

¶7. The Court of Appeals found that Fowler Trucking had failed to secure workers' compensation coverage and was not protected "down-the-line" by Golden Timber's policy. However, the Court of Appeals held that because Lamar's younger sister elected to accept the death benefits under the Act, Lamar's sole remedy was under the Act and not through an independent tort action.[4] Lamar filed a Petition for Writ of Certiorari, which we granted.

## DISCUSSION

### I.

¶8. We apply "a de novo standard of review to the trial court's grant of summary judgment." **Moss v. Batesville Casket Co.**, 935 So. 2d 393, 398 (Miss. 2006). Our rules of civil procedure require the trial court to grant summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c).

¶9. The movant bears the burden of demonstrating that no genuine issues of material fact exist for presentation to the trier of fact, and the non-moving party must be given the benefit of every reasonable doubt. **Moss**, 935 So. 2d at 398. "'Issues of fact . . . are present where one party swears to one version of the matter in issue and another says the opposite." **Id.**

---

[4] In a concurring opinion, joined by Griffis and Roberts, JJ., Judge Southwick explained his view that Lamar's tort action was prohibited not because an election was made to accept the death benefits but because Fowler Trucking had secured coverage by paying Golden Timber for workers' compensation coverage.

4

(*quoting **Tucker v. Hinds County***, 558 So. 2d 869, 872 (Miss. 1990)). Additionally, we apply the plain meaning of the statutes to the issues before this Court. *See **Walker v. Whitfield Nursing Ctr., Inc.***, 931 So. 2d 583, 590 (Miss. 2006).

**II**.

¶10. While we agree with both the trial court and the Court of Appeals that Lamar is precluded from suing in tort for the wrongful death of her father, our reason for this conclusion is materially different from those of both the trial court and the Court of Appeals. As stated previously, the trial court found that Fowler Trucking failed to secure workers' compensation coverage, but was nevertheless immune from suit because Golden Timber had secured coverage. The trial court further found that Fowler Trucking was immune from suit because Bobo's beneficiaries elected the remedy of workers' compensation. While reaching the same result, the Court of Appeals reasoned differently. The Court of Appeals found that Fowler was non-compliant with the Act and, therefore, the Act did not provide it immunity. However, the Court of Appeals agreed that Lamar was precluded from suing in tort because Bobo's beneficiaries had elected their remedy under the Act by receiving workers' compensation payments from Golden Timber. For different reasons, we affirm the trial court's grant of summary judgment and the judgment of the Court of Appeals.

¶11. The Court of Appeals correctly stated that "[t]he ultimate issue is whether Lamar is statutorily prevented from pursuing a common law wrongful death action against Fowler." ***Lamar v. Fowler Trucking***, 2004-CA-00280 at *9. An employee is statutorily prevented from pursuing a common law wrongful death action in one of two ways. First, if it provides workers' compensation coverage to its employees by "securing payment of compensation,"

5

in compliance with section 71-3-7, then its employees are precluded from suing in tort pursuant to section 71-3-9, which provides that workers' compensation payments are the exclusive remedy when the employer secures payment of compensation. Miss. Code Ann. §§ 71-3-7, 71-3-9 (Rev. 2000).

¶12. Second, even if an employer fails to secure payment of compensation, in certain circumstances, an employee may "elect" to proceed under the provisions of the Act in lieu of maintaining an action at law for damages. *See* Miss. Code Ann. § 71-3-9. Once an "election of remedies" is made, then the party electing to proceed under the provisions of the Workers' Compensation Act is precluded from suing in tort. In the case before us, we find that Fowler Trucking complied with section 71-3-7 by "securing payment of compensation," and therefore, we need not address the issue of election of remedies.

**III**.

¶13. While both the trial court and the Court of Appeals focused on the contractor/subcontractor relationship between Golden Timber and Lamar Trucking, analyzing "up-the-line" and "down-the-line" immunity concepts, we find that analysis to be unnecessary, as the issue of whether Fowler Trucking is immune from suit turns on statutory language, that is, whether Fowler complied with section 71-3-7 by "secur[ing] the payment to [its] employees . . . ."

¶14. Fowler Trucking argues that when workers' compensation coverage is provided either by the subcontractor or the contractor, recovery under workers' compensation is the injured worker's sole remedy. This concept, occasionally labeled "down-the-line" immunity, is applicable where it can be justified by statutory language. We find that Fowler Trucking's

6

compliance with the Act provides it the protection of the "exclusive remedy" provision. We further find labeling the protection as "down-the-line" immunity is confusing and unnecessary.

¶15. Pursuant to section 71-3-5, Fowler Trucking qualified as an "employer" because it had "five (5) or more workmen or operatives . . . under any contract of hire." Therefore, as an employer, Fowler Trucking had an obligation to secure compensation for its employees pursuant to section 71-3-7(d), which states in pertinent part:

> Every employer to whom this chapter applies shall be liable for and shall secure the payment to his employees of the compensation payable under its provisions.
> In the case of an employer who is a subcontractor,[5] the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor, unless the subcontractor has secured such payment.

Miss. Code Ann. § 71-3-7-(d) (Rev. 2000) (emphasis added). Thus, if Fowler Trucking "secured such payment," that is, if it took proper steps[6] to provide for the payment of workers' compensation benefits, then it is immune from suit in tort pursuant to section 71-3-9, which states that,

> The liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee . . . except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results

---

[5]This statutory concept is also applied to a subcontractor of a subcontractor. *See **Crowe v. Brasfield & Gorrie Gen. Constr**.*, 688 So. 2d 752, 757 (Miss. 1996).

[6]In the case of a subcontractor, securing payment of workers' compensation benefits may be accomplished by either purchasing a workers' compensation insurance policy or by providing funds for the general contractor to purchase the coverage, so long as the coverage is actually secured. A general contractor may secure payment of benefits by purchasing a policy, or by contractually requiring its subcontractors to secure such coverage.

> from the injury, may elect to claim compensation under this chapter, or to maintain an action at law for damages on account of such injury or death.

Miss. Code Ann. § 71-3-9- (Rev. 2000).  The Court of Appeals correctly noted that "[b]y the language of the Act, immunity is available only to those employers who operate in compliance with the Act."  *Lamar*, 2006 Miss. App. LEXIS 249 at *18.  The Court of Appeals went on to state that "the exclusivity framework has been extended by the Mississippi Supreme Court to include those employers who may be considered 'statutory employers' under section 71-3-7.  This is the principal of 'up-the-line' immunity, and it has become well-established in Mississippi law."  *Lamar*, 2006 Miss. App. LEXIS 249 at *19; *see Mosley v. Bowers*, 224 Miss. 725, 80 So. 2d 819, 821 (Miss. 1955) (this Court extended workers' compensation immunity to a general contractor who was considered a statutory employer of its subcontractor's employees); *Doubleday v. Boyd Constr. Co.*, 418 So. 2d 823, 826 (Miss. 1983) (finding that section 71-3-7 does not subject a general contractor to common law liability if he required the subcontractor to have workers' compensation insurance); *Richmond v. Benchmark Constr., Corp.*, 692 So. 2d 60, 63 (Miss. 1997) (finding that an oral agreement between a general contractor and subcontractor that the subcontractor would provide workmen's compensation insurance was sufficient to extend workers' compensation immunity to a general contractor).

¶16.    We wish to point out that the immunity enjoyed by general contractors is not a gift from this Court, nor is it an extra-statutory concept, but rather is granted by the Legislature under certain statutorily-defined circumstances.  For instance, this Court in *Doubleday* found that the general contractor, Boyd, enjoyed the statutory immunity by "contractually requiring

8

[its subcontractor] to secure a policy of insurance on its employees." 418 So. 2d at 827. The *Doubleday* Court went on to state that the general contractor "'secured' compensation insurance for the benefit of Doubleday within the meaning and purpose of the statute." *Id.*

¶17. The critical question in today's case is whether Fowler complied with the Act by "securing the payment to his employees of the compensation payable under its provisions." Miss. Code Ann. § 71-3-7(d) (Rev. 2000). If so, Fowler Trucking is covered by the exclusiveness of liability of section 71-3-9.

**IV**.

¶18. In determining whether Fowler complied with Miss. Code Ann. Section 71-3-7(d), we turn to facts in the record before us, finding that Fowler did secure compensation as required by the Act. The record indicates that Fowler Trucking hauled logs exclusively for Golden Timber. Golden Timber obtained workers' compensation insurance through the Mississippi Loggers Association Self-Insured Fund. Deposition testimony of Carla Corbitt,[7] the Rule 30(b)(6) representative of Golden Timber, indicated that Golden Timber deducted payments for workers' compensation insurance for Fowler Trucking's employees from Fowler Trucking's gross pay. Additionally, Corbitt's testimony indicated, supported by various statements in the record from the Mississippi Loggers Association Self-Insured Fund, that payment for "contract trucking" coverage was calculated at a rate of $7 per day per truck. Corbitt stated that "the insurance was held out from Fowler Trucking each week. The

---

[7] Corbitt is the daughter of Carlon Golden, the founder of Golden Timber. She started working for Golden Timber in 1982 as a secretary and stated in her deposition that she has "taken over" the office. Corbitt also served on the board of directors for Fowler Trucking from 1995 until 1997.

9

premium was $7 per day per truck, which was deducted from the gross wages at the end of the week." When asked who figured the premium, Corbitt answered, "[m]ost of the time, I did." Corbitt stated that instead of calculating the premium by employee names, Golden Timber calculated the premiums by listing the truck that the Fowler Trucking employee was driving.

¶19. Thomas Fowler, president of Fowler Trucking, also testified during his deposition that workers' compensation premiums were paid by Fowler Trucking for company employees through deductions at a rate of $7 per truck per day. In addition, Fowler testified that to his understanding, workers' compensation premiums were always deducted from the gross proceeds received from Golden Timber. Furthermore, the record contains a Certificate of Liability Insurance which names Golden Timber as the insured and Fowler as an additional insured. Finally, following the death of Bobo, reports of injury (MWCC Form B-3) were filed on behalf of Bobo with the Mississippi Workers' Compensation Commission and, as a result, the Mississippi Loggers Association Self-Insured Fund paid dependant benefits totaling $6,725.60 to Bobo's youngest daughter, Tracie, until she reached the age of 23.

¶20. We find, therefore, that sufficient evidence exists in the record to show that Fowler Trucking complied with the Act by "securing coverage" for Bobo, its employee. Because we find that Fowler Trucking did so, we need not address whether Bobo's beneficiaries are precluded from suing in tort because they elected to receive compensation benefits.

**CONCLUSION**

¶21.    We find that Fowler Trucking complied with the plain language of the Act by "securing compensation," for its employees and, as a result, Lamar is precluded from pursuing an action in tort against Fowler Trucking. Therefore, the trial court did not err in granting summary judgment in favor of Fowler Trucking. Furthermore, the judgment of the Court of Appeals is affirmed.

¶22.    **AFFIRMED**.

     **SMITH, C.J., WALLER, P.J., EASLEY, CARLSON AND RANDOLPH, JJ., CONCUR. DIAZ, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J. LAMAR, J., NOT PARTICIPATING**.

     **DIAZ, PRESIDING JUSTICE, DISSENTING:**

¶23.    Under the reasoning of the majority, no subcontractor in Mississippi ever has to secure workers' compensation insurance. Because no such exemption is present in the Workers' Compensation Act, and because the majority today drafts a dramatic new expansion into the law, I must respectfully dissent.

     **I. The Three Methods of Complying with the Act.**

¶24.    Any review of a case under the Act must necessarily start with the wording of the statutes, which we then apply to the facts of the case. The majority correctly concludes that Fowler Trucking is covered under Section 71-3-5, which mandates that all employers with five or more employees must have workers' compensation insurance. Yet the opinion wavers on the concept from that point onwards, crafting a "good enough" standard that is not present in the statutes. Partly to blame is our unnecessarily complicated case law that has judicially rewritten the Act.

11

¶25.   The Legislature saw fit to explain exactly what constitutes "securing coverage" for the purposes of the Act in Section 71-3-75 of the Code.  As the Court of Appeals explained, this code section "provides three mechanisms for security of payment: (1) by a carrier authorized to insure such liability in this state; (2) by exemption from insuring pursuant to authority from the commission; (3) and by self-insuring or pooling liabilities with other employers engaged in a common type of business under rules and regulations prescribed by the commission." *Lamar v. Thomas Fowler Trucking, Inc.*, 2006 Miss. App. LEXIS 249, *17 n.4 (Miss. Ct. App. 2006); *see Taylor v. Crosby Forest Products Co.*, 198 So. 2d 809, 811 (Miss. 1967) ("The requirement that the employer must secure payment of compensation means that he must have in effect an insurance policy complying with the workmen's compensation act, or must qualify as a self insurer.") (internal citation and quotation omitted).  There are, then, three ways one complies with the Act:  by getting a compliant insurance policy, by obtaining exemption, or by self-insuring.

¶26.   Fowler Trucking admitted it did not secure coverage through the first two means; instead, it argues that it indirectly secured coverage through the corporation it contracted for, Golden Timber, effectively "self-insuring."  As the Court of Appeals stated it, "Fowler Trucking argues that . . . the subcontractor is entitled to immunity from suit because it was actually paying the general contractor for the workers' compensation coverage of its employees."  *Lamar*, 2006 Miss. App. LEXIS 249, at *9.  Yet the only method of compliance left open to Fowler Trucking, the third method of self-insuring defined in detail in Section 71-3-75, must be met exactly.  In full, the requirement states the following:

12

(3) Pooling of liabilities. The commission may, under such rules and regulations as it prescribes, permit two (2) or more employers engaged in a common type of business activity or pursuit, or having other reasons to associate, to enter into agreements to pool their liabilities under this section for the purpose of qualifying as group self-insurers, and, in conjunction therewith, to enter into agreements to pool any other liabilities to their employees, and each employer member of such approved group shall be classified as a self-insurer. A self-insured group under this section shall be comprised of employer members of the same bona fide trade association or trade group. Such trade association or trade group shall be domiciled in the State of Mississippi, shall have been in existence for five (5) or more consecutive years as of the date of application for an approved group and shall not be comprised solely of employer members who are affiliates of a person possessing controlling interest in such affiliates.

Miss. Code Ann. § 71-3-75 (3) (Rev. 2000). There is no evidence Fowler Trucking complied with these procedures.

¶27. The majority concerns itself with the relative usefulness of "down-the-line" or "up-the-line" immunity, distinctions which I agree are unnecessary and confusing; further, they appear to be judicial interpretations grafted onto the very explicit requirements of the Act as written by the Legislature. In my view, because Fowler Trucking already qualified as an "employer" under the Act, any discussion or analysis of general contractors, subcontractors, or "down-the-line" or other immunity is unnecessary, as the Act is clear on what is required of an employer. As the Court of Appeals noted, and what should go without saying, "[i]f the subcontractor employs five or more employees, it must secure workers' compensation coverage." *Lamar*, 2006 Miss. App. LEXIS 249, at *26. Regardless of whether Fowler Trucking was a subcontractor at this particular worksite, any employer under the Act must have met one of the three methods of compliance.

13

¶28. Ultimately, this case revolves around one key question. Did Fowler Trucking, *as an employer*, conform to the requirements of Section 71-3-75, which explains the three ways of compliance? The answer, as the Court of Appeals acknowledged, is simply "no." *See Lamar*, 2006 Miss. App. LEXIS 249, at *17 n.4. It is clear from the facts of this case that Fowler Trucking failed to secure workers' compensation insurance as required by statute because it did not either: 1) get insurance directly; (2) obtain an exemption; or (3) self-insure or pool liabilities as laid out in the Act or the Workers' Compensation Commission regulations.

¶29. Fowler attempted to argue that "where any employer secures payment of compensation, all employers are immune." *Lamar*, 2006 Miss. App. LEXIS 249, at *27-28. No section of the Act allows such a result. Under this reasoning, the very heart of the Act–requiring employers with five or more employees to secure insurance–is gutted. As the Court of Appeals reasoned, "we must presume that, due to the absence of language granting immunity to a party such as Fowler Trucking, it was not the legislature's intent to award such immunity." *Id.* at *33.

¶30. Fowler Trucking wishes to hide from the clear requirements of the Act under a cloak of immunity drawn from the complicated and confusing precedent of this Court. Nonetheless, it is an employer and failed to follow one of the three methods of compliance with the Act. It is imperative that we return to a plain reading of the Act and abandon the ongoing "judicial rewrite" that stretches back decades.

¶31. The majority is correct when it notes that the immunity of employers is not a gift, but a grant from the Legislature. More precisely, it is also a trade-off of rights: the employee

gives up his or her right to maintain suit for insurance, even as the employer must pay for the insurance while gaining assurance of immunity. Yet the majority's opinion today *is* a gift not granted by the Legislature. Under its reasoning, and contrary to the intent of the Legislature and the plain language of the Act, some employers will not have to secure insurance.

¶32. Because Fowler Trucking failed to secure coverage or exemption under the Act, its statutory immunity is sacrificed; accordingly, I would allow Ms. Lamar to pursue a suit in court for the loss of her father.

## II. The Election of Remedies.

¶33. I conclude, as did the Court of Appeals, that Fowler Trucking was not immune to suit. I disagree with the Court of Appeals that Ms. Lamar has no right to proceed in the legal system because she has already elected to obtain benefits under the Act.

¶34. Section 71-3-9 of the Act provides that when an employer fails to secure payment of compensation as required by the workers' compensation statutes, "an *injured employee*, or *his legal representative in case death results* from the injury, may elect to claim compensation under this chapter, or to maintain an action at law for damages on account of such injury or death." (emphasis added). The Act does not define the term "legal representative," and this Court has not addressed the precise meaning of this term in connection with § 71-3-9. However, we have examined the term in the context of a previous version of our non-resident motorist statute, Miss. Code Ann. § 13-3-63 (Rev. 2002).

¶35. In ***Hill v. James***, a Louisiana resident was injured in an automobile accident on a Mississippi highway while riding as a passenger with another Louisiana resident. 252 Miss.

15

501, 175 So. 2d 176 (1965). We carefully analyzed the term "legal representative," noting that:

> The following words 'or other legal representative of the estate' . . . in our opinion, likewise signify a person or persons acting for the benefit of another in a legal or representative capacity such as an administrator *cum testamento annexo*, administratrix, executrix, administrator *de bonis non*, administrator *de bonis non cum testamento annexo*, and others in a like position or class distinct from one as an individual or one in an individual capacity.

*Id*. at 179. In accordance with this finding, we found that the statute did not "authorize an action to be brought against the widow or minor children of a nonresident decedent in their individual capacities." *Id*. at 178.

¶36.   We more recently sought to ascertain the meaning of the term "representative," in determining "whether a Mississippi trial court had personal jurisdiction over Louisiana residents pursuant to the long-arm statute." *Sealy v. Goddard*, 910 So. 2d 502, 506 (Miss. 2005). Finding *Hill* to be instructive, this Court found that "service of process could only be made upon the 'nonresident executor, administrator, receiver, trustee or any other selected or appointed representative'" of the decedent. *Id*. at 511. We found that "[c]learly, none of these statutory terms apply to the individual Sealy heirs." *Id*.

¶37.   In this case, Mr. Bobo's youngest daughter received the funds; she was a minor at the time. In applying the precedent of *Hill* and *Sealy* to the language of Section 71-3-9, the payment made to the minor does not result in an election of remedies by Mr. Bobo's legal representative, his other daughter, Ms. Lamar. According to the statute, when an employer covered by the Act fails to secure coverage, one of two persons can make the election to receive compensation benefits in lieu of suing in tort. That is, the "injured employee or his

16

legal representative in case death results from the injury." Miss. Code Ann. § 71-3-9 (Rev. 2000). Because Mr. Bobo's injuries ultimately caused his death, *only his legal representative* could have waived the right to bring suit by electing to claim compensation under the Act.

¶38. Should the legal representative of the decedent elect compensation benefits when an employer fails to comply with the Act, then the legal representative has effectively "elected the remedy" according to the Act. However, Section 71-3-9 does not license one of the decedent's dependent children to settle a claim on behalf of the estate or the wrongful death beneficiaries without an appropriate proceeding before a court, such as the opening of an estate by a personal representative or the initiation of legal proceedings on behalf of the wrongful death beneficiaries. Therefore, contrary to the opinion of the trial court and Court of Appeals, in my reading Ms. Lamar did not elect compensation under the Act when her younger sister received dependent benefits as a result of their father's death.

¶39. For the reasons above, I respectfully dissent from the majority. I would reverse the Court of Appeals and the trial court, finding that Fowler Trucking was not immune to suit and that Ms. Lamar is eligible to pursue her suit in the Mississippi court system.

**GRAVES, J., JOINS THIS OPINION.**