# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-00427-SCT

*MAGNOLIA HEALTHCARE, INC. d/b/a ARNOLD*
*AVENUE NURSING HOME; FOUNDATION*
*HEALTH SERVICES, INC. AND DIANE*
*OLTREMARI, ADMINISTRATOR*

*v.*

*BARBARA JEAN BARNES, BY AND THROUGH*
*HER RELATIVE AND NEXT FRIEND, SHIRLEY*
*GRIGSBY, AS CONSERVATOR OF THE ESTATE*
*OF BARBARA JEAN BARNES*

DATE OF JUDGMENT:              02/07/2006
TRIAL JUDGE:                   HON. RICHARD A. SMITH
COURT FROM WHICH APPEALED:     WASHINGTON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS:      MICHAEL A. HEILMAN
                               PATRICIA FLEMING KENNEDY
                               CHRISTOPHER THOMAS GRAHAM
ATTORNEY FOR APPELLEE:         GEORGE F. HOLLOWELL, JR.
NATURE OF THE CASE:            CIVIL - CONTRACT
DISPOSITION:                   REVERSED AND REMANDED - 01/10/2008
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

EN BANC.

EASLEY, JUSTICE, FOR THE COURT:

## FACTS AND PROCEDURAL HISTORY

¶1. Barbara Jean Barnes (Barnes) is a mentally incompetent person with the mental capacity of a three-year-old, who is incapable of residing alone. For years, Barnes was cared for by her grandmother until her grandmother became too old to care for her. Barnes's

grandmother contacted Atwood Grigsby, Barnes's cousin, to care for Barnes. Atwood became Barnes's primary caretaker. Barnes resided with Atwood and his wife Shirley until Atwood became seriously ill. Shirley was then unable to care for both her husband and Barnes. On February 19, 2003, Shirley Grigsby (Grigsby) admitted Barnes into Magnolia Healthcare, Inc., d/b/a Arnold Avenue Nursing Home, so she could receive assistance with daily living and personal care.

¶2. On September 12, 2005, Grigsby, acting as the next friend and conservator of the Estate of Barnes, filed a complaint in Washington County Circuit Court against Magnolia Healthcare, Inc., Arnold Avenue Nursing Home, Foundation Health Services, Inc., and Administrator Diane Oltremari (hereinafter referred to as "Magnolia"), alleging that Barnes was negligently treated, abused, and sexually assaulted while she was a resident of Arnold Avenue Nursing Home. Magnolia filed a motion to compel arbitration, pursuant to the arbitration provision in the admission agreement signed by Grigsby.

¶3. The trial court entered an order denying Magnolia's motion to compel arbitration, finding that Grigsby did not possess the statutory or agency authority to bind Barnes to the arbitration provision within the admission agreement. Magnolia now appeals to this Court.

## DISCUSSION

¶4. The issue raised by Magnolia on appeal to this Court is whether the trial court properly denied its motion to compel arbitration. "This Court applies a *de novo* standard of review to denials of motions to compel." ***Covenant Health Rehab of Picayune, L.P. v.***

2

***Brown,*** 949 So. 2d 732, 736 (Miss. 2007) (citing ***Vicksburg Partners, L.P. v. Stephens***, 911 So. 2d 507, 513 (Miss. 2005)).

¶5.     The trial court denied Magnolia's motion to compel arbitration and found that Grigsby did not possess the statutory or agency authority to bind Barnes to the arbitration provision in the nursing home admission agreement. Magnolia contends that Grigsby had the authority to bind Barnes to the arbitration agreement as Barnes's health-care surrogate under the Uniform Health-Care Decisions Act, Mississippi Code Annotated Sections 41-41-201 to 41-41-229 (Rev. 2005).

¶6.     The Legislature codified the authority assigned to a health-care surrogate in Mississippi Code Annotated Section 41-41-211 (Rev. 2005). The section provides in pertinent part:

> (1)  A surrogate may make a health-care decision for a patient who is an adult or emancipated minor if the patient has been determined by the primary physician to lack capacity and no agent or guardian has been appointed or the agent or guardian is not reasonably available.
>
> (2)  An adult or emancipated minor may designate any individual to act as surrogate by personally informing the supervising health-care provider. In the absence of a designation, or if the designee is not reasonably available, any member of the following classes of the patient's family who is reasonably available, in descending order of priority, may act as surrogate:
>
>  (a) The spouse, unless legally separated;
>  (b) An adult child;
>  (c) A parent; or
>  (d) An adult brother or sister.
>
>  (3)  If none of the individuals eligible to act as surrogate under subsection (2) is reasonably available, an adult who has exhibited special care and concern

for the patient, who is familiar with the patient's personal values, and who is reasonably available may act as surrogate.

. . . .

(6) A surrogate shall make a health-care decision in accordance with the patient's individual instructions, if any, and other wishes to the extent known to the surrogate. Otherwise, the surrogate shall make the decision in accordance with the surrogate's determination of the patient's best interest. In determining the patient's best interest, the surrogate shall consider the patient's personal values to the extent known to the surrogate.

(7) A health-care decision made by a surrogate for a patient is effective without judicial approval. . . .

¶7. The facts demonstrate that Barnes is a mentally incompetent person who is incapable of residing alone. In fact, the parties do not dispute that Barnes had the mental capacity of a three-year-old and lacked the ability to reside alone. Grigsby, Barnes's cousin's wife, was her primary caretaker. When Grigsby became unable to continue to care for Barnes due to the deterioration of her husband's health, Grigsby admitted Barnes to the Arnold Avenue Nursing Home on February 19, 2003. Barnes was admitted so she could receive the assistance and care that she needed. On September 12, 2005, Grigsby, acting as the next friend and conservator of the Estate of Barnes, filed a complaint in the Circuit Court of Washington, Mississippi, alleging abuse and sexual assault while Barnes was a resident at Arnold Avenue Nursing Home. Magnolia filed a motion to compel arbitration, which was denied by the trial court.

¶8. "It is well established that this Court respects the ability of parties to agree to the means of dispute resolution prior to a dispute and enforces the plain meaning of a contract

4

as it represents the intent of the parties." ***Covenant Heath***, 949 So. 2d at 740 (citing ***Russell v. Performance Toyota, Inc.*** 826 So. 2d 719, 722 (Miss. 2002)); ***IP Timberlands Operating Co. v. Denmiss Corp***., 726 So. 2d 96, 108 (Miss. 1998). In ***Covenant Heath***, the Court recently addressed whether surrogates can bind patients by signing arbitration agreements on behalf of the patients. ***Covenant Heath***, 949 So. 2d at 736-37. At the time the trial court ruled on Magnolia's motion to compel arbitration, it did not have the benefit of this Court's holding in ***Covenant Health***. The Court stated therein:

> Plaintiffs assert that the admissions agreement is procedurally unconscionable because Brown was incompetent and incapable of entering into a contract, and ***Goss had no authority to bind Brown***.

> With regard to Goss's authority to bind Brown, Defendants cite Miss. Code Ann. § 41-41-211 (Rev. 2005) which says in pertinent part:

> . . . .

> Plaintiffs submit in their motion that Brown was ***incapable of managing her affairs at the time she entered the hospital***. Neither party presents a declaration by Brown's primary physician stating that she was incapable of managing her affairs prior to the signing of the admission agreement, but Plaintiffs state in their motion that Brown's admitting physician at the hospital found that she did not have the mental capacity to manage her affairs. Seeing that Brown was incapacitated by virtue of admission by her representatives and corroboration by her admitting physician, she was capable legally of having her decisions made by a surrogate. Her adult daughter, ***Goss, was an appropriate member of the classes from which a surrogate could be drawn***, and thus, ***Goss could contractually bind Brown*** in matters of health care.

***Id***. (Emphasis added).

¶9.    The Court applied the language of Mississippi Code Annotated Section 41-41-211, finding that if the surrogate satisfies the requirements of the statute, then the surrogate can

5

bind the patient contractually in matters of health care. *Covenant Heath*, 949 So. 2d at 736-37. The Court determined that Goss could bind Brown contractually as her health-care surrogate. *Id*. The Court, in *Covenant*, noted that neither party produced a declaration by Brown's primary physician that she was incapable of managing her affairs, relying instead on the opinion of the admitting physician. *Id*.

¶10. Here, as in *Covenant*, we do not have a declaration by Barnes's primary physician that she was incapable of managing her affairs. However, the fact that Barnes had the mental capacity of a three-year-old and could not reside alone and care for herself is undisputed. Further, Grigsby was in charge of Barnes's social security check and, therefore, her finances. It is clear from the undisputed facts that Barnes was incapable of managing her affairs when she was admitted to the nursing home. Therefore, in this case, there is no factual question that Barnes lacked the capacity to manage her affairs or make appropriate medical decisions on her own behalf. Therefore, the statutory requirement of Mississippi Code Annotated Section 41-41-211(1) was satisfied.

¶11. We must consider whether, under the facts at hand, Grigsby qualified as Barnes's surrogate and whether the arbitration agreement was entered into to obtain health care for the benefit of Barnes. According to Grigsby, Barnes had no available relatives as listed in Mississippi Code Annotated Section 41-41-211(2) to make decisions for her. However, under Section 41-41-211(3), "an adult who has exhibited special care and concern for the patient, who is familiar with the patient's personal values, and who is reasonably available may act as surrogate," when there is no (1) spouse, (2) adult child, (3) parent, or (4) adult

6

brother or sister available. Grigsby was familiar with Barnes's personal values and was serving as her primary caretaker.

¶12. Grigsby assumed responsibility for caring for Barnes's special needs when Barnes's caretaker, her grandmother, became too old to care for her. Grigsby acted as Barnes's primary caretaker until Grigsby's husband became ill, consuming too much of Grigsby's time to allow her to care for Barnes's special needs. Grigsby admitted in her response to Magnolia's motion to compel arbitration that Barnes was mentally retarded and unable to care for herself or make her own decisions. Based on the facts, there is no question that Grigsby qualified as Barnes's surrogate under Mississippi Code Annotated Section 41-41-211(3).

¶13. The record reveals that Grigsby's decision to place Barnes in this nursing home was based on the need for a facility that could provide care for Barnes's special needs. In count XI of the complaint she filed on behalf of Barnes, Grigsby alleged that the nursing facility was chosen because she believed that it "was a facility with the resources and expertise to provide appropriate care to the chronically infirm, mentally dysfunctional, and/or those in need of skilled nursing care and treatment." The complaint further provides that this was the material reason that Grigsby chose this facility. Grigsby acknowledges that Barnes had special needs, having the mental capacity of a three-year-old. Barnes was not in a position to care for herself, feed herself, or provide for her medical needs. It is clear that Grigsby's reason to place Barnes in the nursing home was a health-care decision.

¶14. We find that Mississippi Code Annotated Section 41-41-211 and this Court's holding in *Covenant Health*, 949 So. 2d at 737, provide Grigsby authority as Barnes's health-care surrogate to bind Barnes to arbitration. Therefore, the trial court erred in denying Magnolia's motion to compel arbitration.

## CONCLUSION

¶15. We reverse the trial court's order denying Magnolia's motion to compel arbitration, finding that Grigsby had authority to bind Barnes to the arbitration provision within the nursing home admission agreement, because she was a health-care surrogate under the Uniform Health-Care Decisions Act, Mississippi Code Annotated Section 41-41-201 (Rev. 2005). Therefore, the judgment of the Circuit Court of Washington County is reversed, and this case is remanded to the trial court for proceedings consistent with this opinion.

¶16. **REVERSED AND REMANDED**.

**SMITH, C.J., WALLER, P.J., CARLSON AND RANDOLPH, JJ., CONCUR. GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ, P.J. DICKINSON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LAMAR, J.**

**GRAVES, JUSTICE, DISSENTING:**

¶17. The majority finds that Mississippi Code Annotated Section 41-41-211 and this Court's holding in *Covenant Health Rehab of Picayune, L.P. v. Brown* provide Grigsby with the authority to act on behalf of Barnes as her health-care surrogate and, further, to bind Barnes to arbitration. Miss. Code Ann. § 41-41-211 (Rev. 2005); *Covenant Health Rehab of Picayune, L.P. v. Brown*, 949 So. 2d 732 (Miss. 2007). While I do not disagree that

8

Grigsby was Barnes's health-care surrogate, I disagree with the majority's finding that the decision to arbitrate is a "health-care decision" as defined in Section 41-41-203(h). Miss. Code Ann. § 41-41-203(h) (Rev. 2005).  Therefore, I respectfully dissent.

¶18.    This Court conducts a bifurcated inquiry when determining whether parties should be compelled to arbitrate a dispute. "Under the first prong, the court should determine whether the parties have agreed to arbitrate the dispute." ***Rogers-Dabbs Chevrolet-Hummer, Inc. v. Blakeney***, 950 So. 2d 170, 173 (Miss. 2007) (citation omitted).  The first prong involves two considerations: "'(1) whether there is a valid arbitration agreement and (2) whether the parties' dispute is within the scope of the arbitration agreement.'" ***Id***. (quoting ***East Ford, Inc. v. Taylor***, 826 So. 2d 709, 713 (Miss. 2002)).  "If the court determines that the parties did in fact agree to arbitrate their dispute, the second prong is applied." ***Rogers-Dabbs***, 950 So. 2d at 173.  The United States Supreme Court has determined that the second prong examines "'whether legal constraints external to the parties' agreement foreclosed arbitration of those claims.'" ***Id***. (quoting ***Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.***, 473 U.S. 614, 626, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)).

¶19.    Magnolia contends, and the majority agrees, that Grigsby had the authority to bind Barnes to the arbitration provision found within the nursing home admission agreement by acting as a health-care surrogate under the Uniform Health-Care Decisions Act. While the record does not include documentation from Barnes's physician regarding her lack of capacity to act on her own behalf, it is undisputed by either party that Barnes lacked the mental faculties to reside alone and was mentally incompetent.  Moreover, it is clear from

9

the record that Grigsby, while not a blood relative of Barnes, exhibited special care and concern for Barnes, was familiar with Barnes's values (to the limited extent that the values of an individual with the capacity of a three-year-old would be evident), and was therefore acting on her behalf as a health-care surrogate. While it is clear that Grigsby was Barnes's health-care surrogate, Grigsby could bind Barnes only to *health-care decisions* while acting in that capacity. Mississippi Code Annotated Section 41-41-203(h) defines "health-care decision":

> (h) "Health-care decision" means a decision made by an individual or the individual's agent, guardian, or surrogate, regarding the individual's health care, including:
>
> (i) Selection and discharge of health-care providers and institutions;
> (ii) Approval or disapproval of diagnostic tests, surgical procedures, programs of medication, and orders not resuscitate; and
> (iii) Directions to provide, withhold or withdraw artificial nutrition and hydration and all other forms of health care.
>
> The phrase "health-care decision" does not include decisions made pursuant to Sections 41-39-31 through 41-39-51, the "Anatomical Gift Law."

Miss. Code Ann. § 41-41-203(h) (Rev. 2005).

¶20.    When interpreting a statute, this Court must first determine whether the statute is ambiguous. *Harrison v. State*, 800 So. 2d 1134, 1137 (Miss. 2001). "When a statute is unambiguous, this Court applies the plain meaning of the statute and refrains from the use of statutory construction principals [sic]." *Gilmer v. State,* 955 So. 2d 829, 833 (Miss. 2007) (citing *Pinkton v. State*, 481 So.2d 306, 309 (Miss. 1985)). When the meaning of a statute

10

is clear, this Court may not enlarge or restrict the statute. *Gilmer*, 955 So. 2d at 833 (citing *State v. Traylor,* 100 Miss. 544, 558-59, 56 So. 521 (1911)).

¶21.    Mississippi Code Annotated Sections 41-41-211 and 41-41-203(h) are unambiguous. The Legislature clearly and specifically defined "health-care decision," being careful to list specific instances which qualify as "health-care decision[s]" that a health-care surrogate is authorized to make on behalf of the patient.  There is nothing within the statute that would indicate the Legislature's intent to allow a health-care surrogate to enter into contracts which agree to things that are not strictly related to health-care.  The decision to submit to arbitration is not a health-care decision. *See Mariner Healthcare, Inc. v. Green*, 2006 U.S. Dist. LEXIS 37479 (N.D. Miss. June 7, 2006) (surrogate's authority to make health-care decisions does not extend to arbitration); *Mariner Health Care, Inc. v. Guthrie*, 2005 U.S. Dist. LEXIS 42651(S.D. Miss. Aug. 24, 2005) (holding the same); *see also Pagarigan v. Libby Care Ctr., Inc.*, 99 Cal. App. 4th 298, 120 Cal. Rptr. 2d 892 (Cal. Ct. App. 2002); *Blankfeld v. Richmond Health Care, Inc.*,  902 So. 2d 296, 301 (Fla. Dist. Ct. App. 2005). Furthermore, arbitration is not among those matters specifically delineated in the statute as a "health-care decision."  Miss. Code Ann. § 41-41-203(h) (Rev. 2005).

¶22.    The majority relies on *Covenant Health Rehab of Picayune, L.P. v. Brown* in finding that a health-care surrogate can bind a patient to arbitration.  In that case, when addressing whether a surrogate has the authority to bind an incompetent person to an arbitration agreement, this Court summarily stated, "[h]er adult daughter, Goss, was an appropriate member of the classes from which a surrogate could be drawn, and thus, Goss could

11

contractually bind Brown in matters of health care." *Covenant Health Rehab of Picayune, L.P. v. Brown*, 949 So. 2d 732, 737 (Miss. 2007). It is noteworthy that *Brown* did not cite, address, or analyze "health-care decision" as defined in Mississippi Code Annotated Section 41-41-203(h).

¶23. It is clear from a plain meaning interpretation of the statute that a health-care surrogate is not authorized by Section 41-41-203(h) to waive or compromise a patient's property rights, such as the right to trial by jury or civil remedies in negligence, and therefore, cannot bind a patient to arbitration. Accordingly, I disagree with the majority's finding that Grigsby had the authority as a health-care surrogate pursuant to Mississippi Code Annotated Section 41-41-211 to bind Barnes to the arbitration provision in the Nursing Home Admission Agreement.

¶24. For the foregoing reasons, I respectfully dissent.

**DIAZ, P.J., JOINS THIS OPINION.**

**DICKINSON, JUSTICE, DISSENTING:**

¶25. Once again, a majority of this Court chooses to judicially amend a clear, unambiguous provision of the Mississippi Code. Thus, as I have in the past, when a majority of this Court has taken such liberties, I respectfully dissent.[1]

---

[1] *Lamar v. Thomas Fowler Trucking, Inc.*, 956 So. 2d 878, 881 (Miss. 2007); *Weiner v. Meredith*, 943 So. 2d 692, 694 (Miss. 2006).

¶26. The majority sends Barbara Barnes to arbitration, not because she agreed to arbitrate her case, but because Shirley Grigsby signed an arbitration agreement on her behalf. The legal basis cited by the majority is Mississippi Code Annotated Section 41-41-211, which states in pertinent part:

> (1) A surrogate may make a health-care decision for a patient who is an adult or emancipated minor *if the patient has been determined by the primary physician to lack capacity* and no agent or guardian has been appointed or the agent or guardian is not reasonably available.

Miss. Code Ann. § 41-41-211 (Rev. 2007) (emphasis supplied). Thus, the decision before this Court seems simple: If Grigsby met the statutory requirements, she had authority to bind Barnes to the arbitration agreement; but if she did not meet the statutory requirements, she had no authority to bind Barnes to arbitration.

¶27. By its crystal-clear language, the statute requires that "the patient has been determined by the primary physician to lack capacity." One would think that this threshold requirement would lead us to some cite in the record where Barnes "has been determined by [her] primary physician to lack capacity." Not so. The record contains not one grain of evidence that Barnes's primary physician made any such finding. In fact, the record in this case does not even disclose the identity of Barnes's primary physician. This, of course, begs the question of why the majority would ignore such a clear statutory requirement.

¶28. The majority rationalizes its use of statutory blinders by citing *Covenant Health Rehab of Picayune, L.P. v. Brown*, 949 So. 2d 732 (Miss. 2007). In that case, the defendants raised three issues:

13

1) whether the admissions contract is enforceable when the resident and her responsible party signed the agreement; 2) whether the trial court erred in finding the contract substantively unconscionable; and 3) whether the trial court erred in denying Defendant's motion to compel.

*Id.* at 736. Although the issue of a health-care surrogate's primary physician was not directly before us as an issue raised on appeal, we noted in dictum that neither party presented

> a declaration by Brown's primary physician stating that she was incapable of managing her affairs prior to the signing of the admission agreement, but Plaintiffs state in their motion that Brown's admitting physician at the hospital found that she did not have the mental capacity to manage her affairs.

*Id.* at 736-37. Because the issue was not directly raised on appeal, we were not required to analyze whether Brown's "admitting physician" was her "primary physician." Thus, ***Brown*** serves as no authority (other than dictum) for today's decision.

¶29.    In today's case, by contrast, we have no finding of any kind by any physician. Never mind, says the majority, because we have decided that there should be an exception to the statutory requirement. Thus (the majority announces to the legal public), you do not need to comply with the statute, so long as

> facts demonstrate that [the patient] is a mentally incompetent person who is incapable of residing alone, [And]. . . the parties do not dispute that [the patient has] the mental capacity of a three-year-old and lack[s] the ability to reside alone.

(Maj. Op.¶7).  The majority's language now serves as a substitute for the actual language included in the statute. By the way, it should be clearly noted that the majority does not even pretend to interpret the actual language or provisions of the statute. Instead, the majority – believing itself to be accomplishing the statute's purposes – makes up its own "statutory

14

language" to be applied in this case and, presumably, those that follow. A more obvious and blatant example of judicial activism would be difficult to find.

¶30. Courts should apply statutes as they are written and enacted by the Legislature. Section 41-41-211 allows surrogates to make health-care decisions for a patient "**if the patient has been determined by the primary physician to lack capacity**." (Emphasis supplied.) The statute which imposes this requirement has no qualifications, ambiguities, or exceptions. Today's decision, however, is based upon an exception to the statute which was born in the minds of judges. Because I believe such meddling in the Legislature's constitutional prerogative is inappropriate, I respectfully dissent.

**LAMAR, J., JOINS THIS OPINION**.