# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CA-00101-SCT

*QUINDON D. THOMAS AND LATARA S.J.
THOMAS*

*v.*

*CHEVRON U.S.A., INC. AND DWAYNE HAISCH*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/22/2015 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| TRIAL COURT ATTORNEYS: | MATTHEW MESTAYER |
| | JIM REEVES |
| | PATRICK BUCHANAN |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JAMES R. REEVES, JR. |
| | MATTHEW G. MESTAYER |
| ATTORNEYS FOR APPELLEES: | MICHAEL JAMES BENTLEY |
| | PATRICK R. BUCHANAN |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | REVERSED AND REMANDED - 01/26/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**WALLER, CHIEF JUSTICE, FOR THE COURT:**

¶1. Quindon D. Thomas, an employee of a contractor at Chevron's petroleum refinery plant in Pascagoula, Mississippi, was injured on the job. Thomas accepted workers' compensation benefits provided by Chevron for his injuries. Thomas then sued Chevron and one of its employees for the same injuries. Chevron asserted the exclusive-remedy defense

under the Mississippi Workers' Compensation Act and the circuit court granted summary judgment to Chevron. Thomas now appeals. We reverse and remand for a trial on the merits.

## FACTS AND PROCEDURAL HISTORY

¶2. The facts in this case are largely undisputed. Quindon D. Thomas was injured while working at Chevron's petroleum refinery in Pascagoula, Mississippi, on October 13, 2012. Thomas was employed with Bragg Investment Co., d/b/a American Plant Services, Inc. (APS), as a maintenance worker for the refinery. At the time of the injury, Thomas was working near Dwayne Haisch, a Chevron employee, who opened a valve that expelled hot steam, coke, and water onto Thomas, burning most of his body.

¶3. Chevron had contracted with APS since 2004, to perform maintenance and other specialized services at its refinery. As part of this initial contract, Chevron required APS to provide workers' compensation benefits for its employees. In June 2010, Chevron and APS amended their contract to acknowledge that Chevron would provide workers' compensation insurance for all APS employees working at the refinery through Chevron's Owner Controlled Insurance Program (OCIP).

¶4. Following the incident, Thomas immediately began receiving workers' compensation benefits. Chevron paid $350,000 to Thomas, fully exhausting the policy's self-insured retention. Following that, Indemnity Insurance began paying wages and benefits pursuant to the workers' compensation coverage under the OCIP. In addition to Chevron's payment, Indemnity Insurance had paid Thomas $628,734 in workers' compensation benefits.

2

¶5. Thomas and his wife (hereafter collectively referred to as "Thomas") sued Chevron and its employee, Dwayne Haisch, in the Circuit Court of Jackson County for the injuries Thomas sustained while working at Chevron's refinery. The complaint asserted negligence and premises liability claims against Chevron. In its reply, Chevron raised affirmative defenses, including its immunity from tort liability under the Mississippi Workers' Compensation Act (MWCA). Indemnity Insurance Company of North America (Indemnity Insurance) intervened in the suit. It sought reimbursement for more than $600,000 it had paid to Thomas, in the event Thomas succeeded in the suit against Chevron.

¶6. Following Indemnity Insurance's motion to intervene, Chevron and Haisch moved for summary judgment on the issue of "Whether Chevron was a statutory employer entitled to immunity from suit under the MWCA's exclusive remedy provision." Thomas filed a cross-motion for summary judgment seeking a ruling that Chevron was not entitled to immunity because Chevron was not his statutory employer. On December 22, 2015, the circuit court entered a final judgment in favor of Chevron's motion for summary judgment, dismissing Thomas's cross-motion, and dismissing with prejudice all claims against Chevron. Thomas timely appealed to this Court on January 19, 2016.

**DISCUSSION**

¶7. The standard of review of a trial court's grant of a summary judgment motion is de novo. *Miller v. Meeks*, 762 So. 2d 302, 304 (Miss. 2000) (citing *Short v. Columbus Rubber & Gasket Co.*, 535 So. 2d 61, 63 (Miss. 1988)). Accordingly, this Court will review all the evidentiary matters, admissions in pleadings, answers to interrogatories, depositions,

3

affidavits, etc. ***Aetna Cas. & Sur. Co. v. Berry***, 669 So. 2d 56, 70 (Miss. 1996). The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law, summary judgment should be entered forthwith for the movant. Otherwise, the motion should be denied. ***Heigle v. Heigle***, 771 So. 2d 341, 345 (Miss. 2000).

> **I.** **Whether the circuit court erred in granting Chevron's motion for summary judgment.**

¶8. In its motion for summary judgment, Chevron argued that Mississippi Code Section 71-3-9[1] would afford it immunity from tort liability since it had acted as its own general contractor and had provided compensation benefits to Thomas. *See* Miss. Code Ann. § 71-3-9 (Rev. 2011). Chevron also argued that this Court had recognized a flexible definition of contractor such that Mississippi Code Section 71-3-7(6) would make Chevron the statutory employer of APS and its employees. ***Nash v. Damson Oil Corp.***, 480 So. 2d 1095, 1100 (Miss. 1985); *see* Miss. Code Ann. § 71-3-7(6) (Rev. 2011). Under Mississippi Code

---

[1]Mississippi Code Section 71-3-9 states in pertinent part:

> The liability of an employer to pay compensation *shall be exclusive* and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next-of-kin, and anyone otherwise entitled to recover damages at common law or otherwise from such employer on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this chapter, or to maintain an action at law for damages on account of such injury or death.

(Emphasis added.)

Section 71-3-7(6),[2] a contractor shall be liable for workers' compensation benefits for a subcontractor's employees if the subcontractor has not provided for such benefits. *Id.* When this statute is applicable, the contractor who secures the benefits becomes a statutory employer of the subcontractor's employees and may receive immunity from tort liability.

¶9.     Chevron also argues that, since no Mississippi case yet has dealt with a premises owner acting as a contractor, this Court should look to a recent Texas Supreme Court case, which determined that a premises owner would have tort immunity as a general contractor. ***Entergy Gulf States, Inc. v. Summers***, 282 S.W.3d 433, 438 (Tex. 2009). In ***Summers***, Entergy contracted with International Maintenance Corporation (IMC) to provide certain maintenance and technical services on its various facilities. ***Summers***, 282 S.W.3d at 435-36. The parties agreed that Entergy would provide workers' compensation benefits through its Owner Provided Insurance Program (OPIP). *Id.* After John Summers, an IMC employee, was injured at Entergy's Sabine Station plant, he applied for and received benefits under Entergy's policy. *Id.* Summers then sued Entergy for negligence. *Id.* The Texas Supreme Court faced the issue of whether a premises owner also could act as a general contractor and receive immunity under the workers' compensation act.

¶10.     The Workers' Compensation Act in Texas provides immunity for a general contractor who qualifies under the act. To qualify, the general contractor and subcontractor must enter

_____

[2] Mississippi Code Section 71-3-7(6) provides:

In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor, unless the subcontractor has secured such payment.

5

into a written agreement under which the general contractor agrees to provide the subcontractor with compensation benefits. *Id.* at 436. Further, the Texas Labor Code defines a general contractor as "a person who undertakes to procure the performance of work or a service, either separately or through the use of subcontractors." Tex. Lab. Code § 406.121(1). That Court decided that Entergy clearly was a general contractor under the statute and, despite also being a premise owner, was entitled to immunity.[3] *Id.* at 438.

¶11.   Chevron also argues that, since it voluntarily provided compensation benefits to APS's employees, it was acting as any other general contractor would. Thus, rather than using contractors to avoid liability and defeat the purposes of the Act, Chevron sought to provide maximum coverage for all employees working on its premises. Chevron argued that this was what the Legislature had intended under the Act.

¶12.   In his cross-motion for summary judgment, Thomas argued that Chevron was not a traditional prime or general contractor of APS, as defined by caselaw, and was in fact the

---

[3]The Texas Supreme Court stated in ***Summers***:

> There can be no doubt that premises owners can be, and often are, employers who carry workers' compensation insurance. It is also true that owners frequently contract with others to perform work on their premises. But there has never been a requirement that an owner must first engage a general contractor to have work done on its premises. The owner is free to do the work with its own employees, to directly contract with others to do the work, or to do the work using some combination of the two. The dissent says an owner can be an employer, but cannot be a general contractor. However, we can find nothing in the statute specifying that an owner who also wears the hat of a general contractor is disqualified from coverage under the Workers' Compensation Act simply because it chooses to contract directly for work on its premises.

***Entergy Gulf States, Inc. v. Summers***, 282 S.W.3d 433, 440 (Tex. 2009).

owner of the premises; therefore Chevron was not a statutory employer of Thomas, such that Mississippi Code Section 71-3-9 would apply. Additionally, the contract between Chevron and APS clearly labels APS as a contractor. Thomas argues that, even though Chevron provided compensation for Thomas's injuries, it cannot seek immunity from tort liability where it was not required by statute to provide the coverage in the first place and where it was not a statutory employer of Thomas.

¶13. The Court has dealt with similar situations before, though none in which a premises owner contractually agreed to provide workers' compensation benefits to a contractor's employees. First, in ***Doubleday v. Boyd Construction***, Boyd contracted with the Mississippi Highway Department to complete a project and in turn hired W.T. Ratliff Co. as a subcontractor. ***Doubleday v. Boyd Constr.***, 418 So. 2d 823 (Miss. 1982). In the subcontract, Boyd required Ratliff to provide workers' compensation insurance for its employees. Doubleday, an employee of Ratliff, was injured when a vehicle struck him while he was working on the project. Workers' compensation benefits were paid to Doubleday by Ratliff's workers' compensation carrier. Doubleday filed suit against Boyd, alleging that Boyd had failed to provide adequate traffic warnings. The Court held that when Boyd had contractually required workers' compensation insurance for the employees of Ratliff, its subcontractor, Boyd, had "secured" compensation insurance for the benefit of Doubleday within the meaning and purpose of the statute. ***Doubleday***, 418 So. 2d at 826; *see also* Miss. Code Ann. § 71-3-7(6) (Rev. 2011). That Court further concluded that it would be paradoxical for Boyd to face personal injury judgments while attempting to comply with the statute by

7

contractually securing compensation insurance. ***Doubleday,*** 418 So. 2d at 826. The Court stated that the "primary intention of the [workers' compensation] statute . . . [is] for the protection of employees of independent contractors or subcontractors. " ***Id.*** at 825.

¶14.    Next, in ***Falls v. Mississippi Power & Light Co.*** (MPL), the Court held ***Doubleday*** was not controlling, as MPL was not a prime or general contractor. ***Falls v. Mississippi Power & Light Co.***, 477 So. 2d 254, 258 (Miss. 1985).  The ***Falls*** Court relied on a two-part test to determine whether MPL had to secure workers' compensation insurance: Whether (1) Falls was an employee of MPL (he was not); and (2) whether MPL qualified as a prime contractor and Deviney a subcontractor within the meaning of Section 71-3-7. ***Id.*** at 256. MPL contracted with Deviney to remove some pine branches around its high-voltage power lines located on the right of way it acquired by permit on the Natchez Trace Parkway near Port Gibson, Mississippi. ***Id.*** at 255. Deviney's employee, Henry Falls, was electrocuted to death when he came into contact with a power line on the work site. ***Id.*** MPL had mandated contractually  that Deviney provide workers' compensation benefits to its employees. ***Id.*** at 256.  The Court found that MPL was "not a prime or general contractor within the meaning of those decisions and statute." ***Id.*** at 258; *see also* ***Nations v. Sun Oil Co.***, 695 F. 2d 933 (5th Cir. 1983); ***Doubleday***, 418 So. 2d at 823.  The right of way acquired by MPL through its "permit did not constitute appellee/permittee [(MPL)] as a general or prime contractor for work done by Deviney Company along the right-of-way." ***Falls***, 477 So. 2d at 258. "Deviney Company and its employees were not statutory employees of appellee [(MPL)] and . . . no statutory obligation was imposed upon appellee [(MPL)] to provide workmen's

8

compensation coverage for Deviney and its employees." ***Id.*** MPL was a third party and subject to a common-law tort claim as "any other party" within the meaning of Section 71-3-71. ***Id.***

¶15.    Next, in ***Nash v. Damson Oil Corp.,*** Damson operated an oil field in Wayne County, Mississippi, and entered into a contract with Trigger Contractors, Inc., an independent contractor, to do work on its oil and gas wells. ***Nash v. Damson Oil Corp.***, 480 So. 2d 1095, 1096 (Miss. 1985).  Gary Nash was injured while working on an oil well and received workers' compensation benefits from Trigger Contractors, Inc. ***Id.*** at 1097. Almost three years later, Nash brought a suit against Damson, asserting that Damson was not a statutory employer and was an "other party" under Mississippi Code Section 71-3-71, which allows an injured employee to bring suits against third parties despite having received workers' compensation benefits. ***Id.*** at 1097-98. The trial court had found that this case was similarly situated to ***Doubleday*** and, as a result, Damson was provided immunity. ***Id.*** at 1096. However, on appeal, this Court found that ***Damson*** was not similar to ***Boyd*** and listed several differences, including that "Boyd Construction Co. had no ownership interest in the premises." ***Id.*** at 1098. The ***Nash*** Court stated the following regarding the ownership interest and Damson's status as a contractor:

> The operative point is that Damson's interest, use and activities with respect to the premises are wholly different in nature from those of one ordinarily considered a general or prime contractor–the sort of contractor we believe contemplated by Doubleday . . . . *See* Miss. Code Ann. § 71-3-7. Damson's position with respect to the premises is similar to that of Mississippi Power & Light Company in ***Falls*** and unlike that of Boyd Construction Co. in ***Doubleday***. Damson is an operator or even in a sense an owner pro hac vice, a lessee. On the other hand, Damson lies outside the common understanding

9

of such terms as "prime contractor" or "general contractor." Therefore, Damson is not the sort of "contractor" within the meaning and contemplation of Section 71-3-7.

*Nash*, 480 So. 2d at 1100.

¶16.    Additionally the *Nash* Court found that "nothing in the law obligate[d] such a contractor to secure compensation insurance." *Id.* at 1099.  This is because Mississippi Code Section 71-3-7(6) provides that the contractor is liable only where the subcontractor failed to provide the coverage and Trigger Contractors had provided it to its employees.  Further, the *Nash* Court relied on the holding in *Falls*, where that Court concluded that MPL was not a statutory employer of the injured employee because "nothing in Section 71-3-7 imposed upon MP&L the duty to secure or pay compensation to employees of [the subcontractor]." *Id.* at 1100.

¶17.    In *Richmond v. Benchmark*, the injured employee of a subcontractor of Benchmark challenged the precedent of *Doubleday* where there were similar factual circumstances. *Richmond v. Benchmark*, 692 So. 2d 60, 63 (Miss. 1997).  Benchmark hired United Piping Systems, Inc. (UPS) to perform plumbing work on a site in Brandon, Mississippi. UPS's employee Ernest Richmond was injured while on the work site. *Id.* at 61. Though the agreement was oral, Benchmark had required UPS to maintain workers' compensation insurance, which UPS did at all relevant times. *Id*. at 62-63.

¶18.    The Court in *Richmond* was asked to overrule the *Doubleday* holding because the idea that a "contractor in these cases has 'secured' the payment of compensation to the injured employees of the subcontractors [was a complete fiction]. In each of these cases, the

compensation was secured by the subcontractor/employer." ***Richmond***, 692 So. 2d at 63 (quoting ***Nash***, 480 So. 2d at 1102.) The Court declined to overrule ***Doubleday*** because, where a contractor/subcontractor relationship existed, the statute placed the burden on the contractor to provide coverage if the subcontractor had failed to do so. The statute requires the contractor to "stand in the place of the subcontractor, if the subcontractor fails to obtain workers' compensation coverage." ***Richmond***, 692 So. 2d at 63.

¶19.    In ***Salyer v. Mason Technologies, Inc.***, this Court again found that the contractor was entitled to tort immunity because it had secured benefits to the employees of its subcontractor albeit through the subcontractor's coverage. The Court held that Mason's lack of ownership of the premises and its resemblance to the contractor in ***Doubleday*** afforded Mason immunity from tort liability. The Court again focused on the fact that the "purpose of the legislature was to prevent the general contractor from escaping liability by employing subcontractors who were not financially responsible and leaving the employees unprotected." ***Salyer v. Mason Technologies, Inc.***, 690 So. 2d 1183, 1186 (Miss. 1997) (quoting ***Mills v. Barrett***, 213 Miss. 171, 174, 56 So. 2d 485, 486 (1952)).

¶20.    The federal courts also have relied on a narrow definition of contractor/subcontractor in ***Honey v. United Parcel Service***. Though this case turned on the borrowed servant doctrine, the ***Honey*** Court stated that the relevant statutes provide no definitions for either subcontractor or contractor, and therefore, the Court quoted from ***Nash*** that "one who is a 'contractor' in the 'generic sense' but who 'lies outside the general understanding of such terms as "prime contractor" or "general contractor,"' is "not the sort of 'contractor' within

11

the meaning and contemplation of Section 71-3-7." ***Honey v. United Parcel Serv.***, 879 F. Supp. 615, 617 n.2 (S.D. Miss. 1995) (quoting ***Nash***, 480 So. 2d at 1100).

¶21.     Finally, in ***Magee v. Transcontinental Gas Pipe Line Corp.***, Transcontinental (Transco) purchased a right of way on which it sought to lay a pipeline. Transco then contracted with Singley for the construction of the project.  This Court held that Transco had no duties under the Workers' Compensation Act and therefore "enjoy[ed] no benefits under the Act." ***Magee v. Transcontinental Gas Pipe Line Corp.***, 551 So. 2d 182, 184 (Miss. 1989). The Court continued, "Transco may not gain tort immunity by assuming compensation obligations which in fact and in law it did not have." ***Id.*** Likewise, Chevron may not purchase workers' compensation benefits and secure for itself immunity from tort liability.

¶22.     In sum, this Court never has treated the owner of land as a prime or general contractor for purposes of the Workers' Compensation Act. Here, Chevron was the owner of the plant. The fact that Chevron contracted with APS for certain maintenance and other work does not change Chevron's status as an owner. APS is the chief or prime contractor. A "chief or prime contractor" is defined as one "who has a contract with the owner of a project or job, and has full responsibility for its completion." [4]

¶23.     Chevron had no duty as an employer or contractor to secure workers' compensation insurance and its act of voluntarily purchasing coverage does not change its status. Chevron in this case is not immune from a negligence action and thus is subject to Thomas's tort claim

---

[4] *Chief or Prime Contractor*, Business Dictionary, http://www.businessdictionary.com/definition/prime-contractor.html (last visited Jan. 24, 2017).

as "any other party" pursuant to Mississippi Code Section 71-3-71. *Doubleday*, 418 So. 2d at 827.

> **II.     Whether the circuit court erred in denying Thomas's cross-motion for partial summary judgment.**

¶24.    Since this Court reverses the trial court's grant of Chevron's motion for summary judgment, it also reverses the trial court's denial of Thomas's cross-motion for partial summary judgment, holding that Chevron is not a statutory employer and not immune from tort liability. This Court remands the case for further proceedings consistent with this opinion.

## CONCLUSION

¶25.    This Court finds that Chevron is not a statutory employer of Thomas and therefore is not immune from tort liability. Accordingly, this Court reverses the trial court's grant of summary judgment in favor of Chevron, reverses the trial court's denial of Thomas's cross-motion for summary judgment, and remands for a trial on the merits.

¶26.    **REVERSED AND REMANDED**.

**DICKINSON, P.J., KITCHENS, KING, COLEMAN, MAXWELL AND BEAM, JJ., CONCUR.  RANDOLPH, P.J., AND CHAMBERLIN, J., NOT PARTICIPATING.**