# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CA-00973-SCT

*GAY LYNN HARRIS, JR.*

*v.*

*HEMPHILL CONSTRUCTION COMPANY, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/04/2023 |
| TRIAL JUDGE: | HON. ADRIENNE ANNETT HOOPER-WOOTEN |
| TRIAL COURT ATTORNEYS: | WILLIAM GARRIGUES SHIELDS |
| | LAURA DEVAUGHN GOODSON |
| | H. WESLEY WILLIAMS, III |
| | MATT EVANS HENRY |
| | LEE DAVIS THAMES, JR. |
| COURT FROM WHICH APPEALED: | CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY |
| ATTORNEYS FOR APPELLANT: | WILLIAM GARRIGUES SHIELDS |
| | MACK AUSTIN REEVES |
| ATTORNEY FOR APPELLEE: | H. WESLEY WILLIAMS, III |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 12/12/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KITCHENS, P.J., BEAM AND ISHEE, JJ.**

**KITCHENS, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    Hemphill Construction Company, Inc. (Hemphill), entered into a contract with the City of Jackson (the City). Later, Hemphill entered into a subcontract with Interstate Carbonic Enterprises (ICE), a Texas-based company. The subcontract identified Hemphill as the contractor and ICE as the subcontractor. Harris was an owner and officer of ICE.

¶2. In September 2020, Harris was severely injured while working on the project undertaken by Hemphill and ICE. Harris sought workers' compensation benefits from Hemphill. The matter was heard by an Administrative Judge (AJ). The AJ decided that Harris was not entitled to receive workers' compensation benefits from Hemphill because Harris had voluntarily opted out of ICE's workers' compensation insurance coverage. Neither party appealed the AJ's order.

¶3. On March 1, 2022, Harris lodged a negligence complaint against Hemphill in the Circuit Court of the First Judicial District of Hinds County.[1] In response, Hemphill filed a motion to dismiss, claiming that it had tort immunity due to the exclusive remedy provision in the Mississippi Workers' Compensation Act (MWCA). The trial court agreed and granted Hemphill's motion to dismiss. Harris appeals that decision, arguing that tort immunity is not applicable and that judicial estoppel does apply. Hemphill argues that Harris did not exhaust his administrative remedies.

¶4. We find that Harris was not required to exhaust his administrative remedies and that Hemphill is entitled to tort immunity. Because these issues are dispositive, we decline to address Harris's judicial estoppel argument. We affirm the trial court's decision.

## STATEMENT OF THE FACTS

¶5. In July 2020, Hemphill entered into a contract with the City to "commence and complete the construction of OB CURTIS WATER TREATMENT PLANT GRAVITY THICKENER #1 AND #2 REHABILITATION PROJECT." On or about September 2, 2020,

---

[1]Harris's complaint also was against the City, which is not a party to this appeal.

at the request of the City, Hemphill entered into a subcontract with ICE to perform "water abrasive blasting" to remove the coating on the "Membrane Train 1 wall[.]" The subcontract required ICE to obtain workers' compensation insurance for its employees. It required also that a certificate of insurance be provided, "evidencing that insurance as required by this Subcontract has been obtained and is in full force and effect." The certificate provided showed that ICE had obtained workers' compensation insurance, and it noted that the policy did not contain exclusions for any proprietors, partners, executive officers, or members. It later would be discovered that the insurance policy did contain a provision that excluded Harris, a partner and officer of ICE, from the workers' compensation coverage.

¶6.    On September 8, 2020, while working at the water treatment plant, Harris, who was "the principal owner, operator, and corporate officer of [ICE]," was injured because of an improperly secured decking panel. When Harris stepped onto the panel, it collapsed, causing him to fall approximately fifteen feet to the concrete basin below. As a result of the fall, Harris suffered several injuries.

¶7.    In December 2020, Harris filed a petition to controvert before the Mississippi Workers' Compensation Commission (MWCC), "seeking benefits from Hemphill and its workers' compensation insurance carrier." Harris claimed that Hemphill was his statutory employer, allowing him to receive benefits. Specifically, Harris claimed that

> Although Hemphill was not the actual employer of [Harris] at the time of his injury, Hemphill is subject to responsibility as [Harris's] statutory employer pursuant to Miss. Code Ann. § 71-3-7. Hemphill and [Harris's] business, [ICE], entered into an agreement executed on September 3, 2020 wherein Hemphill was the prime contractor and [Harris's] business was the subcontractor.

. . . .

> Although [ICE] carried workers' compensation insurance coverage for its employees at the time of [Harris's] work-related injury, [Harris] himself was excluded from coverage under the policy pursuant to his allowable election to do so . . . under Texas insurance rules and regulations. Mississippi law is clear . . . that the employee of an uninsured subcontractor becomes an employee of the general contractor for purposes of workers compensation coverage.

In response, Hemphill denied being Harris's statutory employer "because ICE had secured workers' compensation coverage for his employees." Hemphill filed a motion to dismiss Harris's workers' compensation claim. On September 1, 2021, a hearing was held before an AJ. On September 8, 2021, the AJ granted the motion to dismiss. The AJ determined that

1) it was undisputed that Harris was an officer of ICE;

2) ICE had agreed to provide and maintain workers' compensation insurance as required by the contract;

3) the certificate of insurance did not indicate that an officer of the company had opted out of coverage;

4) pursuant to his right to do so as an officer of the corporation, the evidence demonstrated that Harris "was well aware that he had opted out of his workers' compensation policy procured by ICE prior to his injury occurring,"[2]

---

[2]The statute that allows officers to opt out of coverage in Mississippi is Mississippi Code Section 71-3-79 (Rev. 2021). Similar to Section 71-3-79, Texas's Labor Code Section 406.097(a) allows an executive officer to opt out of coverage:

> [a] sole proprietor, partner, or corporate executive officer of a business entity that elects to provide workers' compensation insurance coverage is entitled to benefits under that coverage as an employee unless the sole proprietor, partner, or corporate executive officer is specifically excluded from coverage through an endorsement to the insurance policy or certificate of authority to self-insure.

4

The AJ concluded that, based on Mississippi case law, Harris was "prohibited from attempting to be covered as an employee from a statutory employer, *i.e.*, Hemphill, and, . . . [Harris was] not entitled to workers' compensation benefits under the Workers' Compensation Act." Harris did not appeal the AJ's decision.

¶8.     On March 1, 2022, Harris filed a complaint against Hemphill in the Circuit Court of the First Judicial District of Hinds County, alleging negligence and gross negligence. On April 13, 2022, Hemphill filed a motion to dismiss and for judgment on the pleadings. Hemphill asserted that it was entitled to tort immunity, even though Harris had elected voluntarily to exclude himself from ICE's insurance policy because ICE was required to and had obtained workers' compensation insurance for its employees. It asserted also that Harris's tort claim was improper as he had failed to exhaust his administrative remedies. In response, Harris argued that the motion to dismiss should be denied on the basis of judicial estoppel, that tort immunity was inapplicable, and that the claim was properly before the circuit court. On October 25, 2022, the court held a hearing regarding Hemphill's motion. The circuit court granted the motion to dismiss. On November 9, 2022, Harris filed a motion to reconsider, alter, or amend the judgment. After a hearing on Harris's motion, the court granted in part and denied in part Harris's motion for reconsideration.[3] The court stated, in relevant part:

---

Tex. Lab. Code Ann. § 406.097(a).

[3]The court denied the motion in part, determining that the City should not have been dismissed because there was "an issue with regard to liability as it relates to the City of Jackson."

[Harris] chose not to extend coverage to himself and the [c]ourt failed to find any statutory authority or case law that will allow for benefits to be extended to [him] under these circumstances. As such, this [c]ourt finds that workers' compensation benefits were available to the plaintiff through his employer, ICE, but [Harris] and/or ICE declined to extend coverage to [Harris]. . . . The present set of circumstances presents the issue of whether Hemphill can now be held liable as a "third party" and not as a "statutory employer." This [c]ourt finds that [Harris] can bring a claim for negligence against any party believed to be responsible for such acts, but this [c]ourt does not find that [Harris] can now take advantage of the judicial system when the workers' compensation coverage would have been [Harris's] exclusive remedy but for [his] failure to extend coverage to himself. Thus, the [c]ourt finds that the defendant Hemphill's Motion to Dismiss is hereby GRANTED.

¶9. The circuit court entered a final judgment pursuant to Rule 54(b) of the Mississippi Rules of Civil Procedure, which made final Hemphill's dismissal from the case. Harris appealed, contending that the trial court had erred by "dismissing Hemphill in the underlying tort suit."

¶10. On appeal, Harris argues that (1) since Hemphill is not his statutory employer, it "cannot be [a]fforded [i]mmunity under the MWCA exclusion," and (2) Hemphill is estopped from claiming immunity under the MWCA. He claims that "[t]he issue(s) before this Court will determine whether contractors, *i.e.*, Hemphill, who are determined to not be statutory employers may be subject to suit in tort."

¶11. Hemphill asserts that

The trial court was correct in granting the motion to dismiss and applying the exclusive remedy tort immunity to a general contractor who contractually required a subcontractor to secure workers' compensation insurance, and where the subcontractor did procure such coverage. The fact that Harris was a corporate officer who rejected coverage under his company's workers' compensation policy does not affect the immunity issue.

6

It argues that it is entitled to tort immunity pursuant to *Doubleday v. Boyd Construction Co.*, 418 So. 2d 823 (Miss. 1982), because ICE had "secured such payment," i.e., the subcontractor had an insurance policy that covered its employees. It argues also that Harris failed to exhaust his administrative remedies before seeking relief in the circuit court and that judicial estoppel should be applied to Harris, not Hemphill.

## STANDARD OF REVIEW

¶12.    "This Court applies a de novo standard of review to the trial court's decision to grant or deny a motion to dismiss." *Cent. Insurers of Grenada, Inc. v. Greenwood*, 268 So. 3d 493, 497 (Miss. 2018) (citing *McClain v. Clark*, 992 So. 2d 636, 637 (Miss. 2008)).

## DISCUSSION

### A.    Did Harris exhaust his administrative remedies?

¶13.    First, this Court must decide whether Harris exhausted his administrative remedies prior to filing his negligence suit. Hemphill argues that

> Harris had an available remedy in the form of a petition for review with the [MWCC]. He had twenty days from the ALJ order to file his petition for review with the ultimate fact finder but failed to do so. . . . The ALJ's order held that Harris could not pursue a workers' compensation claim against Hemphill. Harris had an avenue of review with the Commission which he failed to exercise. Exhaustion of administrative remedies does not mean quitting after receiving the first adverse determination. It includes pursuing appeals. Because Harris failed to do this, he failed to exhaust his administrative remedies and this matter should have been dismissed.

Harris asserts that he was not required to appeal the AJ's decision, which was final.

¶14.    Despite its having been asserted throughout the entire court proceedings, the trial court never issued a ruling on this argument. Whether a person has exhausted his or her

7

administrative remedies concerns the trial court's jurisdiction of the subject matter, and we have held that "[t]he question of subject-matter jurisdiction may be raised at any time." *Bell v. Finnegan (In re Guardianship of B.A.D.)*, 82 So. 3d 608, 614 (Miss. 2012) (citing *Burnette v. Hartford Underwriters Ins. Co.*, 770 So. 2d 948, 951 (Miss. 2000)); *see also Miss. Dep't of Corr. v. McClure*, 386 So. 3d 372, 377 (Miss. 2024).

¶15.    This Court has held that

> "Where an administrative agency regulates certain activity, an aggrieved party must first seek relief from the administrative agency before seeking relief from the trial courts." [*Chevron U.S.A., Inc. v. Smith*, 844 So. 2d 1145, 1148 (Miss. 2002)] (citing *State v. Beebe*, 687 So. 2d 702, 704 (Miss. 1996)); *see also* [*Petro Harvester Oil & Gas Co., LLC v. Baucum*, 323 So. 3d 1041, 1043 (Miss. 2021)]. But "where no adequate administrative remedy is provided, the exhaustion doctrine is not applicable." *Baucum*, 323 So. 3d at 1046 (internal quotation mark omitted) (quoting *Donald v. Amoco Prod. Co.*, 735 So. 2d 161, 176 (Miss. 1999)).

*Tiger Prod. Co., LLC v. Pace*, 353 So. 3d 429, 433 (Miss. 2022). We have recognized that when no adequate administrative remedy exists for a person's common law claim, that person is not required to exhaust his/her administrative remedies prior to filing a complaint in the appropriate court. *See Pace*, 353 So. 3d at 434 (quoting *Baucum*, 323 So. 3d at 1051); *see also McClure*, 386 So. 3d at 378, 380-81 (The trial court had jurisdiction over the claims, "and the exhaustion doctrine does not apply because there are no adequate administrative remedies for [the] claims.").

¶16.    This Court finds that Harris's negligence suit was before the trial court properly. First, there is no requirement that a claimant appeal an AJ's decision to the full commission when the claimant accepts the decision, even if such decision was adverse to the claimant's

interests. To the contrary, Mississippi Code Section 71-3-47 provides that a decision from an AJ "shall be final unless within twenty (20) days a request or petition for review by the full commission is filed." Miss. Code Ann. § 71-3-47 (Rev. 2021); *see also* **Felter v. Floorserv, Inc.**, 140 So. 3d 426, 428 (Miss. 2013) ("If the notice of appeal is not filed within twenty days, the Commission does not have jurisdiction to hear the matter."). Additionally, Mississippi Code Section 71-3-93 provides that "[f]or the purpose of conducting hearings and making decisions upon claims, the [AJ] . . . appointed by the commission shall have the authority of a commissioner." Miss. Code Ann. § 71-3-93 (Rev. 2021). Harris accepted the AJ's decision and did not appeal or challenge the ruling before the full commission, the trial court, or this Court. The AJ's ruling and order became final after twenty days.

¶17. Second, even if Harris had appealed to the full commission, the issue would have concerned his entitlement to compensation.[4] Pursuant to Mississippi Code Section 71-3-1(3), the Mississippi Workers' Compensation Commission's

> primary purposes . . . are to pay timely temporary and permanent disability benefits to every worker who legitimately suffers a work-related injury or occupational disease arising out of and in the course of his employment, to pay reasonable and necessary medical expenses resulting from the work-related injury or occupational disease, and to encourage the return to work of the worker.

Miss. Code Ann. § 71-3-1(3) (Rev. 2021). While Harris's negligence claims against Hemphill "are causally related to activities that are regulated by the [MWCC], that does not give the [MWCC] unlimited jurisdiction over the claims." **Pace**, 353 So. 3d at 434.

---

[4]Hemphill acknowledges that "[t]his appeal does not involve a workers' compensation claim."

9

Therefore, the exhaustion doctrine does not apply, and Harris was not required to exhaust his administrative remedies prior to filing his negligence suit.

### B. Is Hemphill immune from Harris's tort suit?

¶18. Mississippi Code Section 71-3-9(1) states, in relevant part,

> the liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee . . . or anyone otherwise entitled to recover damages at common law . . . , except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee . . . may elect to . . . maintain an action at law for damages on account of such injury or death.

Miss. Code Ann. § 71-3-9(1) (Rev. 2021). Additionally, Mississippi Code Section 71-3-7(6), which concerns liability between contractors and subcontractors, states that "[i]n the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor, unless the subcontractor has secured such payment." Miss. Code Ann. § 71-3-7(6) (Rev. 2021). "A 'chief or prime contractor' is defined as one '*who has a contract with the owner of a project or job, and has full responsibility for its completion.*'" *Thomas v. Chevron U.S.A., Inc.*, 212 So. 3d 58, 64 (Miss. 2017) (emphasis added) (quoting *Chief or Prime Contractor*, Business Dictionary, http://www.businessdictionary.com/definition/prime-contractor.html (last visited Jan. 24, 2017)). This Court has recognized that "[a] concise definition of a subcontractor: "[a] subcontractor is one who enters into a contract, express or implied, for performance of an act with a person who has already contracted for its performance, or who takes a portion of a contract from the principal or prime contractor." *Rodgers v. Phillips Lumber Co.*, 241 Miss.

10

590, 130 So. 2d 856, 857 (1961) (internal quotation marks omitted) (quoting Dunn, *Mississippi Workmen's Compensation* § 10, at 7).

¶19. This Court has addressed the applicability of the exclusive remedy immunity in various circumstances.[5] However, we have not addressed whether a contractor is immune when an owner or officer of a subcontractor has opted out of insurance coverage, even though the subcontractor was required to have such coverage.

¶20. Harris asserts that his tort suit was proper because Hemphill was not entitled to tort immunity because the AJ had determined that Hemphill was not Harris's statutory employer. Harris argues that the AJ's decision that Hemphill was not Harris's statutory employer "directs the path of this case" because tort immunity "has to be earned by the actual

---

[5] This Court has held in several cases that workmen's compensation benefits are the exclusive remedy of an injured employee. We were of the opinion that immunity from a common law negligence suit extends not only to employers; but also to co-employees, *McCluskey v. Thompson*, 363 So. 2d 256 (Miss.1978)[, *receded from by Choctaw, Inc. v. Wichner*, 521 So. 2d 878 (Miss. 1988)]; corporate officers, *Brown v. Estess*, 374 So. 2d 241 (Miss.1979); dual employment cases, *Ray v. Babcock & Wilcox Co., Inc.*, 388 So. 2d 166 (Miss.1980); agency cases, *Robertson v. Stroup*, 254 Miss. 118, 180 So. 2d 617 (Miss.1965); and situations where a subcontractor carries no insurance for the protection of their employees, *Mosley v. Jones*, 224 Miss. 725, 80 So. 2d 819 (1955), *Mills v. Barrett*, 213 Miss. 171, 56 So. 2d 485 (1952). The reason for extending immunity from suit in those particular situations was that the intention and philosophy of the workmen's compensation act would be abrogated if the responsibility of carrying compensation insurance could be transferred from a general employer to another. *McCluskey*, supra.

*Doubleday*, 418 So. 2d at 825.

obligation to provide benefits in the bargained for exchange, whereby the injured worker relinquishes a common law negligence claim." Specifically, he claims that "[t]ort immunity only applies to the employer who has the liability for the no-fault workers' compensation benefits." Or, in other words, since Hemphill was under no obligation and had no duties pursuant to the MWCA, it cannot enjoy the benefit of tort immunity provided by the MWCA. *See* **Thomas**, 212 So. 3d at 58.

¶21.    Hemphill disagrees that the determination of whether one is a statutory employer triggers exclusive-remedy immunity. Instead, Hemphill argues, tort immunity is triggered based on "the contractor-subcontractor relationship and the fact that Hemphill required ICE to secure workers' compensation coverage." Thus, Hemphill claims that the workers' compensation exclusive-remedy doctrine provided immunity from the suit because the subcontractor, *i.e.*, ICE, had been required by Hemphill to secure workers' compensation insurance for its employees.

¶22.    Harris contends that, in order for Hemphill to have immunity the "MWCA requires that Harris be considered an employee of a subcontractor [ICE]." He cites Mississippi Code Section 71-3-79 and Mississippi Code Section 71-3-5 (Rev. 2021) for support. Harris claims that "[u]nder § 71-3-79, corporate officers are generally considered employees for coverage purposes unless they reject coverage." He "admitted that Harris rejected coverage under the policy and likewise that ICE further chose to 'exempt' Harris as the owner of (15%) or more of its corporate stock 'from provisions of the Workers' Compensation Law.'" Regarding Section 71-3-5, Harris says that he

12

did not have a compensable claim as to ICE because [he] was not an employee for purposes of the MWCA—to say otherwise would render § 71-3-5 exemption available by election to corporate officers/owners moot. Furthermore, § 71-3-5 specifically states that employers who are exempt from the MWCA may choose to assume liability "with respect to any employee or classification of employees," and if they so choose—the employer assumes liability under the MWCA "only with respect to such employee or such classification."

Simply, Harris's claim was not compensable because "MWCA § 71-3-5 clearly dictates that ICE only assumed liability under the MWCA as to Brandon Kelly, ICE's employee." Therefore, Harris argues that since he was exempt from coverage, he "was not held to be, and cannot now be held as an employee of ICE nor that of Hemphill, in any manner, for purposes of the MWCA's exclusive remedy to apply to Hemphill."

¶23. Hemphill disagrees that Harris's rejection of workers' compensation coverage means that "he magically ceased to be an employee of ICE." It disagrees also with Harris's interpretation of Sections 71-3-79 and 71-3-5. Hemphill relies on Section 71-3-79, specifically "[e]very executive officer . . . shall be an employee of such corporation[.]" It asserts that Section 71-3-79 "does not say that an executive officer ceases to be an employee of the corporation if coverage is rejected. Rather, the executive officer remains an employee who has rejected coverage." Likewise, the plain language of Section 71-3-5 does not state that an exempted sole proprietor, partner or employee owning at least fifteen percent of his or her corporation's stock "cease[] to be employees of the corporation."

¶24. Harris has acknowledged that "[a]t all times material and relevant hereto, [he] was an owner and corporate officer of ICE." His reliance on the AJ's denial of workers' compensation benefits to demonstrate that Hemphill cannot claim immunity as it was deemed

13

not to be his statutory employer is misplaced.[6] The AJ's ruling has no bearing on whether

Harris, as an executive officer of ICE, also is an employee of ICE. The MWCA defines

*employee* as "any person . . . in the service of an employer under any contract of hire or

apprenticeship, written or oral, express or implied[.]" Miss. Code Ann. § 71-3-3(d) (Rev.

2021). Additionally, the Mississippi Business Corporation Act states that the term *employee*

"includes an officer but not a director." Miss. Code Ann. § 79-4-1.40(15) (Rev. 2024).

¶25.    This Court has recognized that:

> "Corporate officers who perform only executive functions are deemed
> excluded from almost all acts. But a person who can establish independently,
> on the basis of nature of the work done, method of payment, and subservience
> to the control of an employer, that he meets the tests of employment does not
> forfeit that status by occupying at the same time the status of corporate officer,
> director or stockholder. Members of a partnership, however, apart from a new
> special statutes, cannot be employees, even if they do extra work for which
> they receive payment beyond their share of the profits, since there is no
> separate business entity that can be called the employer, and since all partners
> normally have equal rights in management."
>
> . . . "As long as an officer's or director's duties are confined to the executive
> functions associated with the office, such as policy making, hiring and firing,
> negotiating of important contracts, and the like, the compensation act does not
> apply.["]
>
> "It is quite common, however, especially in small corporations whose demands
> upon their officers take only a small fraction of their time, to find that the
> officers also discharge duties which, if performed by anyone else, would
> unquestionably confer employee status. In such cases, when the normal
> incidents of employment attend the performance of the non-executive work,

_____

[6]Additionally, the AJ's ruling did not state explicitly that Hemphill was or was not a statutory employer. Rather the AJ ruled that Harris's statutory employer argument was "prohibited" and that he was not entitled to workers' compensation benefits because, as an officer of the corporation, he knowingly had opted out of coverage. *See Champion Cable Constr. Co., Inc. v. Monts*, 511 So. 2d 924, 928-29 (citing *Am. Sur. Co. v. Cooper*, 222 Miss. 429, 76 So. 2d 254 (1954)); *Sullivan v. Sullivan*, 192 So. 2d 277 (Miss. 1966)).

it is uniformly held that the compensation act applies. The clearest instances are those in which *the officer engages in manual or non-supervisory tasks*, as in the case of a corporation president working in a coal yard at two dollars a day under the orders of the general manager, . . . a president and principal stockholder doing selling, manual work, and the like, a secretary-treasurer-director-stockholder doing collection work, or an officer doing sales work on the road or behind a counter. In addition, the vast majority of the cases have awarded compensation even when the employment duties were of a supervisory character, such as those of a general manager, superintendent of a department, foreman, or superintendent of construction, since these are all jobs that, in ordinary circumstances, would make the holder an employee."

***M.E. Badon Refrigeration Co. v. Badon***, 231 Miss. 113, 95 So. 2d 114, 117 (Miss. 1957)

(fourth alteration in original) (emphasis added) (quoting Larson, *Workmen's Compensation Law*, §§ 54.00, 54.21). Also, Chapter 2, Section 12 of the Mississippi Workers' Compensation Law states:

A corporate officer who renders services of any type typically *has either an express or implied contract of hire with the corporation* and regarded as a covered employee. The officer would also be counted as an "operative" of the organization. The state's Business Corporation Law (Miss. Code Ann. § 79-4-1.40) says an officer is the corporation's employee. In addition, the Workers' Compensation Law at § 71-3-79 says "Every executive officer . . . of a corporation . . . shall be an employee of such corporation."

In addition to the laws that apply to officers generally, section 71-3-79 calls for mandatory coverage of an "executive officer" unless that officer rejects coverage by written notice to the insurance carrier. The effect of such rejection excludes the officer from entitlement to benefits and also excludes the wages or earnings from the insurance premium calculation. The rejection would not remove the executive officer's being counted toward the five "operatives."

Miss. Workers' Comp. L. § 2:12 (emphasis added).

¶26.    Here, Harris's work was not limited to executive work only. He engaged also in manual labor, such as the water abrasive treatment. If Harris had performed solely executive

functions, *e.g.*, payroll or contract negotiations, he probably would not have been walking across the deck at the water facility to begin the water blasting treatment. As an executive officer of ICE, he had either an express or implied contract with ICE to carry out the corporation's services. As a result, he would be classified as an employee pursuant to Section 71-3-3(d). Rejecting workers' compensation coverage does not alter Harris's status within ICE. Harris was an executive officer of ICE before and after he rejected the insurance coverage. A corporate officer is an employee in the context of Mississippi Workers' Compensation Law. *See* Miss. Code Ann. § 79-4-1.40(15); Miss. Code Ann. § 71-3-3(d). The same is true if a corporate officer opts out of his company's workers' compensation insurance. Thus, an executive officer's withdrawal from an employer's workers' compensation policy does not mean that the officer no longer is an employee of the corporation. Thus, this Court finds that Harris was an employee of ICE under the facts of this case and the applicable law.

¶27.     Each party cites a specific case it believes controls the outcome of this case:  (1) Harris relies on ***Mayberry v. Cottonport Hardwoods***, 365 So. 3d 1003 (Miss. App. Ct. 2022),[7] and (2) Hemphill relies on ***Doubleday***, 418 So. 2d 823.

¶28.     Harris points to the analysis made by the Court of Appeals in ***Mayberry***, in which that court reasoned:

> [t]he decision as to whether Cottonport was Mayberry's "statutory employer" directs the path of this case in one of two directions. If Cottonport is

---

[7]***Mayberry*** is a Court of Appeals case, which is not binding authority to this Court. *See **Stewart v. Stewart***, 864 So. 2d 934, 937 (Miss. 2003) ("Court of Appeals decisions are not binding on this Court[.]").

Mayberry's "statutory employer," then Mayberry cannot proceed against Cottonport because workers' compensation is his exclusive remedy. Miss. Code Ann. § 71-3-9. However, if Cottonport is not Mayberry's "statutory employer," Cottonport is subject to suit, and this action may continue. Miss. Code Ann. § 71-3-71 [8].

*Mayberry*, 365 So. 3d at 1007. According to Harris, this same reasoning would apply here, meaning if Hemphill is Harris's statutory employer, then Harris cannot proceed in tort due to the exclusivity provision. If Hemphill is not Harris's statutory employer, however, then Hemphill is subject to suit, and Harris's tort suit may proceed. Hemphill claims that *Mayberry* is distinguishable from this case because Hemphill had an obligation to perform,[9] whereas Cottonport "was under no contractual obligation to do anything."

¶29. To answer its question, the Court of Appeals wrote that it "must take a de novo look at the facts of this case and the law to determine whether Cottonport is a 'contractor' or a 'subcontractor.'" *Id.* The court determined that exclusive-remedy immunity did not apply because Cottonport did not "come within 'the common understanding of such terms as

---

[8]This statute provides in relevant part:

> In case of liability of the employer or insurer to make payment to the state treasury under the second injury fund provisions, if the injury or death creates a legal liability against a third party, the employer or insurer shall have a right of action against such third party for reimbursement of any sum so paid into the state treasury, which right may be enforced in the action heretofore provided or by an independent action.

Miss. Code Ann. § 71-3-71 (Rev. 2021).

[9]The contract between the City and Hemphill required Hemphill to commence work "within ten (10) calendar days after the date of the NOTICE TO PROCEED and will complete the same within THREE HUNDRED THIRTY DAYS (330) calendar days" unless otherwise extended.

17

"prime contractor" or general contractor" and was subject to Mayberry's suit. *Id.* at 1010-11. Cottonport was the owner, not a prime or general contractor, meaning he was under no obligation to complete the project. *Id.*; *see also Thomas*, 212 So. 3d at 64 ("In sum, this Court has never treated the owner of land as a prime or general contractor for purposes of the Workers' Compensation Act."). In reaching this conclusion, the Court of Appeals relied upon this Court's ruling in *Thomas*. In that case, this Court held that Chevron was not entitled to immunity since it was the owner and had no duty "to secure workers' compensation insurance and its act of voluntarily purchasing coverage does not change its status." *Thomas*, 212 So. 3d at 64-65; *see also Magee v. Transcon. Gas Pipe Line Corp.*, 551 So. 2d 182, 184 (Miss. 1989) ("Because Transco was not a 'contractor,' and because Singley had secured compensation for Magee's benefit, the Act imposed no duties on Transco. Accordingly, Transco enjoys no benefits under the Act."). It reasoned that a company or person "may not gain tort immunity by assuming compensation obligations which in fact and in law it did not have." *Thomas*, 212 So. 3d at 64 (internal quotation mark omitted) (quoting *Magee*, 551 So. 2d at 184).

¶30.   We find that the Court's rationale in *Doubleday* controls in this case. The injured employee, Doubleday, who was employed by W.T. Ratliff Co., Inc. (Ratliff), the subcontractor, filed a complaint against Boyd Construction Company (Boyd), the prime/general contractor. *Doubleday*, 418 So. 2d at 824. The subcontract between Boyd and Ratliff required Ratliff to obtain workers' compensation insurance for its employees.[10] *Id.*

_____

[10]Unlike Harris, Doubleday did not opt out of coverage. Also, Doubleday had received compensation benefits from the subcontractor's insurance carrier. *Doubleday*, 418

18

The trial court dismissed Doubleday's complaint, determining that "the exclusive remedy available to Doubleday against Boyd . . . was workmen's compensation benefits" because "Boyd, the prime contractor, was a statutory employer of the employees of Ratliff, the subcontractor." *Id.* On appeal, the ***Doubleday*** Court found that the issue that needed to be decided was "whether a general contractor may be sued as a third party in common law negligence by an employee of a subcontractor who has workmen's compensation insurance." *Id.* In order to decide this issue, the Court had to answer the following question:

> [W]hether the legislature intended to impose upon a general contractor the responsibility of securing workmen's compensation benefits for employees of a subcontractor and if so intended, does this responsibility, when fulfilled, give the general contractor immunity from suit as a third party tortfeasor the same as if the insurance had been provided by the general contractor?

*Id.* at 826. Doubleday argued that Boyd was not a statutory employer because it was relieved of "the responsibility of procuring compensation," since the subcontractor had secured the required compensation for its employees. *Id.* at 825.

¶31.   The Court stated that "[t]he primary intention of the statute was . . . for the protection of employees of independent contractors or subcontractors who were not financially responsible[.]" *Id.* Additionally, it recognized that extending immunity might be appropriate in some circumstances when "the intention and philosophy of the workmen's compensation act would be abrogated if the responsibility of carrying compensation insurance could be transferred from a general employer to another." *Id.* (citing ***McCluskey***, 363 So. 2d 256). The Court rationalized that "it would be paradoxical for Boyd to face personal injury judgments

So. 2d at 824.

19

while attempting to comply with the statute by contractually securing compensation insurance."[11] ***Thomas***, 212 So. 3d at 62 (citing ***Doubleday***, 418 So. 2d at 826). Thus, it held that it was not the legislature's intent "to subject a general contractor to common law liability if he complied with § 71-3-7 by requiring the subcontractor to have workmen's compensation insurance." ***Doubleday***, 418 So. 2d at 826. Because the general contractor, *i.e.*, Boyd, had secured compensation insurance within the meaning and purpose of the Section 71-3-7(6) by contractually requiring the subcontractor to obtain such insurance for its employees, the general contractor was entitled to immunity.[12] ***Id.*** at 826-27.

¶32.    Because tort immunity is available only to those who comply with the MWCA, we have recognized that the essential question that must be answered is whether there was compliance with Section 71-3-7(6)'s requirement that payment be secured. ***Lamar v. Thomas Fowler Trucking, Inc.***, 956 So. 2d 878, 882-83 (Miss. 2007) ("[T]he issue of whether Fowler Trucking[, the subcontractor,] is immune from suit turns on statutory language, that

---

[11]The full quotation from ***Doubleday*** is:

> It would be paradoxical however, in our opinion, to hold as the appellant entreats that a general contractor risk personal injury judgments in common law suits if he complies with the statute by contractually securing compensation insurance by his subcontractor, but if he lets work to subcontractors who do not comply with the act, then his liability is limited to the sums provided by the act. We do not think the legislature intended such an improbable result.

***Doubleday***, 418 So. 2d at 826.

[12]Comparing ***Mayberry*** and ***Doubleday***, the two cases are distinguishable because ***Mayberry*** concerned an owner, not a general contractor, meaning the court did not have to determine whether the individual had an obligation to secure payment.

is, whether Fowler complied with section 71-3-7 by 'secur[ing] the payment to [its] employees . . . .'"); *see also* **Thomas**, 212 So. 3d at 61 (stating that when Section 71-3-7(6) "is applicable, the contractor who secures the benefits becomes a statutory employer of the subcontractor's employees and may receive immunity from tort liability"). This Court has interpreted the phrase "secured such payment" to mean that if the proper steps were taken "to provide for the payment of workers' compensation benefits, then it is immune from suit in tort pursuant to section 71-3-9." **Lamar**, 956 So. 2d at 882-83. "A general contractor may secure payment of benefits by purchasing a policy, or *by contractually requiring* its subcontractors to secure such coverage." **Id.** at 883 n.6 (emphasis added).

¶33.   We find that Hemphill, the general contractor, secured payment by contractually requiring ICE to obtain workers' compensation coverage. Hemphill did all it could to ensure that it was hiring a financially responsible subcontractor who had secured coverage for its employees. But it was Harris's own action, *i.e.*, withdrawing from coverage under the insurance policy, that deprived him of benefits under the MWCA. While Harris was within his right to withdraw from ICE's insurance policy, he cannot now seek to be compensated for his damages at Hemphill's cost. We hold that it is necessary to extend tort immunity under these circumstances. *See* **Doubleday**, 418 So. 2d at 825. We find that Hemphill should not be punished and subjected to a common law tort claim when it had taken all the necessary actions to protect itself and the employees of the subcontractor. Hemphill's actions were sufficient to satisfy the statute's requirement to secure payment as it had contractually required ICE to procure insurance. This Court finds that Hemphill is entitled to tort immunity

21

because it had secured payment within the meaning and purpose of Section 71-3-7(6). The trial court's decision to award Hemphill immunity and dismiss it from the negligence action is affirmed.

## CONCLUSION

¶34. Because Hemphill required ICE to obtain compensation insurance, it satisfied the statute's requirement that it "secure[] such payment." Miss. Code Ann. § 71-3-9(1) (Rev. 2021). This compliance affords Hemphill immunity from Harris's tort claim. We affirm the trial court's decision.

¶35. **AFFIRMED.**

**RANDOLPH, C.J., KING, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**